IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AVIATION WEST CHARTERS, LLC, dba ANGEL MEDFLIGHT, | CASE NO.1: 16 CV 210 |
| Plaintiff, | JUDGE DONALD C. NUGENT |
| v. | |
| UNITED HEALTHCARE INSURANCE COMPANY, *et al.*, | MEMORANDUM OPINION |
| Defendants. | |

This matter comes before the Court upon the Cross Motions of the Parties for Judgment on the Administrative Record. For the reasons set forth below, the Motion of Plaintiff Aviation West Charters, LLC ("Angel MedFlight") for Judgment on the Administrative Record (ECF #32) is granted in part and the action is remanded to the Plan for consideration of Angel MedFlight's second appeal. The Motion of Defendants United Healthcare Insurance Company ("United Healthcare" or "United") and Ernst & Young Medical Plan for Certain Medicare-Eligible Retirees ("the Plan") for Judgment on the Administrative Record (ECF #34) is denied in part and remanded.

## BACKGROUND

Plaintiff Angel MedFlight filed this action on January 28, 2016, alleging that Defendants unjustly denied ERISA health plan benefits to John S, a participant in the Defendant Plan. The Plan is sponsored by Ernst & Young US LLP and provides health care benefits to certain retirees of Ernst & Young. The Plan is administered by Defendant United Healthcare who has the discretionary authority to process claims and make determinations on claims for benefits and on appeals of denied claims. Plaintiff Angel MedFlight provided ground and air ambulance services to John S. in November 2013, transporting him from the hospital in Hilton Head, South Carolina to University Hospitals in Cleveland, Ohio. United Healthcare denied Plaintiff's claims for reimbursement for the non-emergency flight from Hilton Head South Carolina to Cleveland, Ohio in the amount of $193,975 and ground ambulance service from Hilton Head Hospital to the Hilton Head airport and from Cleveland Burke Lakefront airport to University Hospitals in the amount of $13,327.58. John S. assigned to Angel MedFlight his benefits claims for the cost of these services.

In November 2013, John S., a 77 year old Cleveland man, was vacationing in Hilton Head, South Carolina when he began experiencing fever and chills. John S. went to a local Hilton Head physician, Dr. Joel Johnson, who took blood cultures. Dr. Johnson referred John S. to Hilton Head Regional Medical Center for admission and further testing when aerobic and anaerobic blood cultures returned positive for gram-positive Streptococci, a particularly serious issue because John S. had recently undergone aortic valve-replacement surgery. John S. was admitted to the Hilton Head hospital on November 13, 2013. (Administrative Record "AR" at 342-344)

John S. spent a week at the Hilton Head hospital undergoing testing, receiving consults from infectious disease and cardiology, and IV antibiotic treatment. Given John S's history of valvular heart disease and bioprosthetic aortic valve replacement in the presence of bacteremia, his treating physicians were concerned that subacute bacterial endocarditis could emerge. (AR 347, 349) Endocarditis is a potentially fatal condition to which individuals with prosthetic valves are predisposed and requires immediate intervention using IV antibiotic therapy. Surgery to replace or repair an affected valve are also a potential intervention. (AR 335) John S. wished to return to Cleveland and his established doctors and surgeon there. While the contemporaneous Hilton Head hospital medical records do not state that transfer was initiated by Hilton Head treating physicians, one of John S's treating physicians in Hilton Head, Dr. Carlos Cordero, submitted a letter in support of the air ambulance transport stating that it was in the best interest of John S. to transfer to University Hospitals, the tertiary care facility that has an established relationship with John S. and where his aortic valve replacement was performed. John S. was accepted and approved by insurance for admission into University Hospitals under the care of his primary care physician Dr. James Coviello. Further, given John S's bacteremia, the threat of endocarditis and his episode of new onset atrial fibrillation and the long distance between Hilton Head and Cleveland, Dr. Cordero stated that it would be inappropriate to transfer John S. by any means other than a medically-equipped air ambulance. (AR 334-336).

John S. was discharged from Hilton Head hospital on November 20, 2013 and transported by Angel MedFlight from Hilton Head to Cleveland.[1] On November 26, 2013, Angel MedFlight

---

[1] Angel MedFlight submitted a pre-authorization request for the air ambulance flight which was not processed by United because the Plan does not require that air-ambulance flights

submitted two health insurance claim forms to United, one for non-emergency air ambulance services and one for ground ambulance transport. (AR 513, 514) Along with the claims, Angel MedFlight included supporting documentation including the admission notes and Hilton Head hospital records of Dr. Dingus, the admitting physician. (AR 139-197) Included with these documents was a letter stating that Angel MedFlight recognized that Medicare may be the primary insurance coverage but that air ambulance services are statutorily excluded by Medicare. In addition, the letter stated that Angel MedFlight was not a Medicare-contracted provider and does not provide services covered by Medicare and, thus, Angel MedFlight "cannot and will not be able to submit a claim to Medicare on behalf of this patient." (AR 147) United issued a Provider Explanation of Benefits ("EOB") on December 23, 2013 for the ground transportation claim denying coverage because "the Plan does not cover ambulance services or associated expenses which are not due to an emergency." (AR 199) On March 24, 2014, United issued an EOB for the air transport portion of the claim denying coverage because "the code(s) billed are not supported by the documentation we received benefits are limited to documented services. Therefore benefits are not available." (AR 203-205)[2]

Thereafter, United asserts that Angel MedFlight sought reconsideration of United's decisions which were addressed and denied by United on March 21, 2014, April 9, 2014, April 16, 2014, and April 18, 2014. All four "responses" sent by United were identical stating "[b]ased on our review, we processed this claim accurately. No further payment is due from us because

---

be preauthorized. (AR 768)

2

While United claims that the March 23, 2014 EOB covered the air ambulance portion of the claim, the EOB clearly references all portions of the claim. (AR 205)

-4-

this claim was correctly processed according to the terms of the patient's health benefit plan." (AR 201, 207, 209, 211)

Angel MedFlight submitted a first appeal by letter dated June 12, 2014, claiming that both emergency and non-emergency ambulance services are covered under John S's Plan. (AR 213-218) In addition Angel MedFlight submitted additional documentation regarding its services, including a letter of medical necessity from Dr. Cordero, one of John S's treating physicians in Hilton Head and more of John S's Hilton Head hospital records, flight guidelines and medical literature. (AR 219-451) By a letter dated July 16, 2014, United upheld the denial of the claim stating that in the opinion of its claim reviewer, Dr. Biliack, there were several other, much closer hospitals that John S. could have gone to for this treatment, including hospitals in Savannah GA, Charleston SC, or Atlanta GA, thus the flight to Ohio was not medically necessary and services which are not medically necessary are not covered services under the Plan. (AR 474)

Angel MedFlight submitted a second appeal by letter dated January 12, 2015. (AR 503) United denied the second appeal on January 28, 2015 as untimely, stating that in order to be valid, a second level appeal must be made within 60 days of the date the initial appeal response was received.(AR 741)

Angel MedFlight filed this action on January 28, 2016, seeking to recover ERISA benefits under the Plan.

## **STANDARD OF REVIEW**

A district court will review de novo a plan administrator's denial of ERISA benefits unless the benefit plan gives the plan administrator discretionary authority to determine eligibility

for benefits or to construe the terms of the plan. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 613 (6th Cir. 1998). If "the benefit plan expressly gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms," then the district court shall review the plan administrator's decision under the arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 114 (1989); *Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 547 (6th Cir. 2015). The Plan at issue here provides that the Ernst & Young Plan has delegated to the claims processors "the sole authority to make determinations on claims for benefits and on appeals of denied claims. In making such determinations, the claims processors shall have the discretion to construe and interpret the Plan, to make findings of fact and determine the rights and status of participants and others under the Plan." Thus, the proper standard of review in this case is whether United's decision denying benefits was arbitrary and capricious.

The arbitrary and capricious standard is the least demanding review of an administrative action. *See Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989). A decision regarding eligibility for benefits is not arbitrary and capricious if the decision "is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Balmert v. Reliance Standard Life Insurance Co.*, 594 F.3d 496, 500 (6th Cir.2010); *Kouns v. Hartford Life & Acc. Ins. Co*, 780 F. Supp. 2d 578, 584 (N.D. Ohio 2011). ' "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir.1989) (internal quotation marks omitted). However, arbitrary-and-capricious review is not a "rubber stamp."' *Shaw*, 795 F.3d at 547. Further, in applying the arbitrary and capricious standard in

ERISA actions, the Court must conduct its review based solely upon the administrative record existing in the case. *Wilkins*, 150 F.3d at 615.

## DISCUSSION

Angel MedFlight argues that United asserted frivolous grounds for denial and then shifted to new unsupported grounds to uphold the denial on appeal. United initially denied the ground ambulance claim on the basis that the Plan does not cover ambulance services "which are not due to an emergency." United initially denied the air ambulance claim with the vague assertion that "the code(s) billed are not supported by the documentation we received benefits are limited to documented services, therefore benefits are not available." (AR 199, 205). However, even a superficial examination of the Plan demonstrates that the Plan does provide coverage for non-emergency transportation by ground and/or air ambulance. (AR 101). United abandoned these grounds for denial of benefits after Angel MedFlight submitted its first level appeal.

In upholding the denial of benefits on first appeal, United asserted that there were several closer hospitals that John S. could have gone to for treatment thus the flight to Ohio was not medically necessary and services which are not medically necessary are not covered services under the Plan. (AR 474) Angel MedFlight argue's that United's denial ignores the letter of treating physician Dr. Cordero, stating that transfer to Ohio was in John S's best interest and ignored the standard of care and medical literature on which Dr. Cordero relied. Moreover, Angel MedFlight contends that the relevant Plan provision does not contain a nearest-facility requirement for non-emergency air ambulance services and in any event, United did not provide the name of a single closer hospital that was both capable of providing the treatment John S.

needed and willing to accept his transfer.

The relevant provision of the Plan for non-emergency ambulance service provides:

> (2) non-emergency transportation by local professional ground
> ambulance service to transport the individual: from the place where
> he/she is injured or stricken by disease, to the first hospital where
> treatment is given; for transportation to the nearest hospital that can
> provide the necessary care; from one hospital to another hospital in the
> area and back again when it is documented that the first hospital
> does not have the required services and/or facilities to treat the
> patient; hospital to home, skilled nursing facility or nursing home
> when the patient cannot be safely or adequately transported any
> other way (e.g., full body cast, traction, continuous oxygen),
> and (3) non-emergency transportation by regularly-scheduled
> airline, or railroad to the nearest medical facility qualified to give the
> required treatment as part of a medical center of excellence program; <u>and
> air ambulance when the patient requires transport from one hospital to
> another because the first hospital does not have the required service
> and/or facilities to treat the patient and ground ambulance is not
> medically appropriate because the distance involved and the patient has
> an unstable condition requiring medical supervision and rapid transport</u>.
> (AR 101)

Moving first to the air ambulance claim, the wording of this provision is such that the nearest qualified medical facility requirement applies to transportation by regularly scheduled airline. The underlined portion refers to air ambulance services and does not contain the nearest qualified medical facility language. It does have a qualification that the first hospital does not have the required service and/or facilities to treat the patient. However, United's decision to deny coverage, as conveyed to John S. in the EOB, was based upon Dr. Biliack's conclusion that John S's transfer to Ohio was not medically necessary because John S. could have gotten treatment at closer hospitals. Under the terms of the Plan, a denial based upon distance in this instance contravenes the terms of the Plan.

United also argues that the ground ambulance claim was properly denied because the

-8-

non-emergency ground ambulance provision of the Plan requires transport to the nearest hospital that can provide the necessary care. That is true, however, when the decision is made to transport a patient by air ambulance because ground ambulance is not medically appropriate because of the "distance involved and the patient has an unstable condition requiring medical supervision and rapid transport" it must be assumed that such a patient would be transferred from the hospital to the air ambulance by ground ambulance. In that case the distance between the hospital and the airport is usually minimal.

Angel MedFlight filed a second appeal to address United's new "nearest facility" reason for denial but United rejected the second appeal as untimely.[3] Under the terms of the Plan a "second level appeal request must be submitted within 180 days from receipt of the first level appeal decision." (AR 115) United denied the second appeal as untimely stating "[a]ccording to your plan, in order to be valid, a second level appeal must be made within 60 days of the date the initial response was received. An initial appeal was reviewed and responded to on July 16, 2014. The request was not received within the designated time limitation, and our original benefit determination must stand." (AR 741). At some point during this action, United conceded that the appeal time for a second appeal was 180 days not 60 days but still maintains that the second appeal was untimely because Angel MedFlight's January 12, 2015 letter of appeal was not mailed until January 14, 2015 and did not get into United's hands until January 16, 2015.

---

[3] United now raises an additional reason for denial of the claims–no proof in the record that Hilton Head hospital could not provide the treatment (IV antibiotic treatment or potential aortic repair surgery) that John S. may have required. This reason was not expressed in the EOBs sent to John S, thus the Court will not address it for the first time on final appeal.

However, under the terms of the Plan, the time for appeal is measured from the day Angel MedFlight received the first level appeal decision until the day the second level appeal request was submitted by Angel MedFlight. United's first appeal decision was dated July 16, 2014 but was not postmarked until July 17, 2014. (AR 472) The record does not reflect when Angel MedFlight received the decision, but it was sent by first class mail and was probably received by Angel MedFlight within the usual delivery time of up to 3 business days. Thus, the 180 days began to run on July 22, 2014. The 180 day period expired on January 20, 2015 (the first business day following the holiday). Thus, Angel MedFlight's submission of its second level appeal on January 14, 2015 was within the Plan's second level appeal time.

The Court finds that United failed to comply with the time limits for appeals and wrongly failed to consider Angel MedFlight's second appeal materials. As such, remand to the Plan is required in order to address the second appeal.[4]

## CONCLUSION

For the reasons set forth above, the Motion of Plaintiff Aviation West Charters, LLC ("Angel MedFlight") for Judgment on the Administrative Record (ECF #32) is granted in part and the action is remanded to the Plan for consideration of Angel MedFlight's second appeal. The Motion of Defendants United Healthcare Insurance Company ("United Healthcare" or

---

[4] United is correct that remand is not required where remand would be a useless formality. See *McCartha v. National City Corp.*, 419 F.3d 437, 444(6th Cir. 2005)(remand would be useless formality because the Plan had provided to the claimant a reasonable basis for denying her benefits.) In this case, based upon the EOBs provided to Plaintiff, United never provided Angel MedFlight a "reasonable basis" for denying John S's claims.

"United") and Ernst & Young Medical Plan for Certain Medicare-Eligible Retirees ("the Plan") for Judgment on the Administrative Record (ECF #34) is denied in part and remanded.

IT IS SO ORDERED.

*Donald C. Nugent*
DONALD C. NUGENT
United States District Judge

DATED: June 30, 2017